IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| RAMONDRIA JALONE JOHNSON, JR., | |
| Plaintiff, | CIVIL ACTION NO.: 2:22-cv-89 |
| v. | |
| OFFICER JACOB HORNE, OFFICER NEAH BONDS, and CAMILLE MONTANEZ, | |
| Defendants. | |

### REPORT AND RECOMMENDATION

Defendants Bonds and Montanez filed a Motion to Dismiss Plaintiff's Complaint. Doc. 30. Defendant Horne also filed a Motion to Dismiss Plaintiff's Complaint. Doc. 33. These Motions are fully briefed and ready for review. See Docs. 35, 40, 41, 42.[1] For the following reasons, I **RECOMMEND** the Court **GRANT** Defendant Bonds and Montanez's Motion to Dismiss, **GRANT** Defendant Horne's Motion to Dismiss, and **DISMISS without prejudice** Plaintiff's Complaint based on his failure to exhaust available administrative remedies. Because I have recommended dismissal in this case, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to proceed *in forma pauperis* on appeal.

---

[1] Plaintiff filed "Objections" to Defendant Bonds and Montanez's Motion to Dismiss, which the Court construes as a Response brief. Doc. 35. Defendant Bonds and Montanez filed a Reply. Doc. 40. Defendant Horne also filed a Reply. Doc. 41. Plaintiff filed a Surreply. Doc. 42. It appears Plaintiff's Surreply is also a Response in opposition to Defendant Horne's Motion to Dismiss.

**BACKGROUND**

Plaintiff, a pretrial detainee proceeding pro se, filed this Complaint asserting constitutional claims under 42 U.S.C. § 1983.  Doc. 1.  Plaintiff's claims arise from an attack by another prisoner on June 4, 2022, at the Glynn County Detention Center ("GCDC").  Id.  After conducting frivolity review, the Court permitted Plaintiff to proceed with failure-to-protect claims against Defendants Horne, Bonds, and Montanez.  See Doc. 19.

Plaintiff alleged Defendants are responsible for another prisoner attacking him.  Defendant Bonds, a jail officer, and Defendant Montanez, a nurse, opened Plaintiff's cell door "to survey a complaint [Plaintiff] made about throat & chest problems not being able to eat anything."  Doc. 1 at 22.  At the same time, Defendant Horne, another jail officer, left open the cell of another inmate in the same pod, Malcolm Davis.  Id. at 13–15, 22.  Defendant Horne was aware of an altercation between Plaintiff and Davis earlier in the day.  Id. at 22.  While Defendant Montanez was examining Plaintiff, Davis rushed into Plaintiff's cell.  Id.  Davis knocked over Defendants Bonds and Horne and punched Plaintiff in the face.  Id.  Davis continued assaulting Plaintiff, hitting Plaintiff's head against the wall and violently pushing him against the sink, causing Plaintiff to "black in and out."  Id.  Defendants Bonds and Horne "scream[ed] in panic," and other officers arrived to pull Davis off Plaintiff.  Id.

Plaintiff alleges Defendant Horne admitted he was responsible for the assault.  After the incident, Defendant Horne told Plaintiff he (Horne) left both Plaintiff's and Davis's cell doors open at the same time, against protocol.  Id. at 13–14, 22.  Defendant Horne apologized to Plaintiff and tried to bribe Plaintiff not to report the incident.  Id.  A deputy with internal affairs later told Plaintiff Defendant Horne was fired over the incident.  Id. at 24–25.

**DISCUSSION**

Defendants Bonds and Montanez argue Plaintiff's claims should be dismissed for failure to exhaust his administrative remedies before suing. Doc. 30-1 at 9–16. Defendant Horne joins this argument. Doc. 33 at 6–7. Defendants also argue Plaintiff's Complaint should be dismissed because Plaintiff failed to state a failure-to-protect claim against them.[2] Doc. 30-1 at 16–18; Doc. 33 at 7–10. Plaintiff opposes Defendants' Motions to Dismiss, arguing the grievance record on which Defendants rely is missing documents. Doc. 35 at 2; Doc. 42 at 1. Plaintiff also argues Defendants' actions violated his rights. Doc. 35.

**I.      Prison Litigation Reform Act's Exhaustion Requirements**

Under the Prison Litigation Reform Act ("PLRA"), an incarcerated individual must properly exhaust all available administrative remedies—including the prison's internal grievance procedures—before filing a federal lawsuit to challenge prison conditions. 42 U.S.C. § 1997e(c)(1); see Jones v. Bock, 549 U.S. 199, 202 (2007); Harris v. Garner, 216 F.3d 970, 974 (11th Cir. 2000). The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1208 (11th Cir. 2015) (quoting Woodford v. Ngo, 548 U.S. 81, 93 (2006)).

---

[2]      Defendant Horne, in his Reply brief, requests his Motion to Dismiss be granted as unopposed because Plaintiff failed to file a timely Response in opposition. Doc. 41. Defendant Horne filed his Motion to Dismiss on September 11, 2023. Doc. 33. On September 13, 2023, the Court mailed Plaintiff an Order directing him to file a response to Defendant Horne's Motion within 14 days. Doc. 34. Plaintiff filed "Objections" to Defendants Bonds and Montanez's motion to dismiss, dated September 14, 2023. Doc. 35. Plaintiff filed a "Reply," dated October 20, 2023, where Plaintiff appears to oppose Defendant Horne's Motion to Dismiss. Doc. 42. Because Plaintiff appears to oppose all three Defendants' Motions to Dismiss and because Plaintiff addresses Defendants' arguments in his briefing, I deny Defendant Horne's request to grant his Motion as unopposed.

Proper exhaustion is mandatory, and courts have no discretion to waive it or excuse it based on improper or imperfect attempts to exhaust, no matter how sympathetic the case or how special the circumstances.  Ross v. Blake, 578 U.S. 632, 639 (2016) (finding the PLRA requires exhaustion "irrespective of any 'special circumstances'" and its "mandatory language means a court may not excuse a failure to exhaust, even to take such circumstances into account"); Jones, 549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").  Moreover, courts may not consider the adequacy or futility of the administrative remedies afforded to the inmate.  Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (noting an inmate's belief administrative procedures are futile or needless does not excuse the exhaustion requirement).  Rather, courts may only determine whether administrative remedies are available and whether the inmate properly exhausted these remedies prior to bringing his federal claim.  Id.

Proper exhaustion requires compliance with the prison's administrative policies, deadlines, and other critical procedural rules.  Woodford v. Ngo, 548 U.S. 81, 91–92 (2006); Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'" (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005))).  "[A]n inmate alleging harm suffered from prison conditions must file a grievance and exhaust the remedies available under that procedure before pursuing a § 1983 lawsuit."  Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012) (quoting Brown v. Sikes, 212 F.3d 1205, 1207 (11th Cir. 2000)); Gooch v. Tremble, No. 1:18-cv-058, 2018 WL 2248750, at *3 (S.D. Ga. Apr. 20, 2018) ("[B]ecause exhaustion of administrative remedies is a 'precondition' to filing an action in federal court, Plaintiff had to complete the entire administrative grievance procedure before initiating this

suit." (quoting Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000))). An incarcerated individual cannot "cure" an exhaustion defect by properly exhausting all remedies after filing suit. Terry, 491 F. App'x at 83; Harris, 216 F.3d at 974.

Moreover, to properly exhaust, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant, 530 F.3d at 1378; see also Okpala v. Drew, 248 F. App'x 72, 73 (11th Cir. 2003) (affirming sua sponte dismissal for failure to exhaust when a federal inmate submitted a written complaint and appealed the decision but filed his lawsuit before receiving the final decision on his appeal); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

## II.    Standard of Review for Exhaustion

A defendant may raise an inmate-plaintiff's failure to exhaust as an affirmative defense. Jones, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA . . . ."); Pearson v. Taylor, 665 F. App'x 858, 867 (11th Cir. 2016); Whatley I, 802 F.3d at 1209. When so raised, "[d]efendants bear the burden of proving that the plaintiff failed to exhaust his administrative remedies." Pearson, 665 F. App'x at 867 (quoting Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008)); see also Trevari v. Robert A. Deyton Det. Ctr., 729 F. App'x 748, 752; White v. Berger, 709 F. App'x 532, 541 (11th Cir. 2017); Dimanche v. Brown, 783 F.3d 1204, 1210 (11th Cir. 2015); Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008).

While exhaustion is a mandatory requirement for suing, one exception exists. Ross, 578 U.S. at 642 ("The PLRA contains its own, textual exception to mandatory exhaustion."). "Under the PLRA, a prisoner need exhaust only 'available' administrative remedies." Id. at 638; Pavao

v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017). Drawing from the plain language of the word "available," the United States Supreme Court has concluded "an inmate is required to exhaust . . . only those[ ] grievance procedures that are 'capable of use' to 'obtain some relief for the action complained of.'" Ross, 578 U.S. at 642; Turner, 541 F.3d at 1084 (quoting Goebert v. Lee County, 510 F.3d 1312, 1322–23 (11th Cir. 2007) ("A remedy has to be available before it must be exhausted, and to be 'available' a remedy must be 'capable of use for the accomplishment of its purpose.'")). "Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available." Turner, 541 F.3d at 1084.

Courts recognize "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 642. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Id.; Turner, 541 F.3d at 1083 (noting the PLRA "does not require inmates to craft new procedures when prison officials demonstrate . . . they will refuse to abide by the established ones"). Second, exhaustion is not required when an administrative procedure is "so opaque" or "unknowable" that "no ordinary prisoner can discern or navigate it." Ross, 578 U.S. at 642. Finally, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation[,]" such thwarted inmates are not required to exhaust. Id. at 644; Abram v. Leu, 759 F. App'x 856, 860 (11th Cir. 2019) ("An administrative remedy may be unavailable when prison officials interfere with a prisoner's pursuit of relief."); Dimanche, 783 F.3d at 1214 ("The PLRA does not 'require[ ] an inmate to grieve a breakdown in the grievance process.'" (quoting

6

Turner, 541 F.3d at 1083)); Miller v. Tanner, 196 F.3d 1190, 1194 (11th Cir. 1999) (finding exhaustion does not require plaintiff-inmates "to file an appeal after being told unequivocally that appeal of an institution-level denial was precluded").

In Turner v. Burnside, the Eleventh Circuit laid out a two-part test for resolving motions to dismiss for failure to exhaust administrative remedies under § 1997e(a). 541 F.3d at 1082. First, courts "look[] to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." Id.; see also Bracero v. Sec'y, Fla. Dep't of Corr., 748 F. App'x 200, 202 (11th Cir. 2018). This prong of the Turner test ensures there is a genuine dispute of material fact regarding the inmate-plaintiff's failure to exhaust. Glenn v. Smith, 706 F. App'x 561, 563–64 (11th Cir. 2017) (citing Turner, 541 F.3d at 1082); Pavao, 679 F. App'x at 824. "The court should dismiss [the action] if the facts as stated by the prisoner show a failure to exhaust." Abram, 759 F. App'x at 860 (quoting Whatley v. Warden, Ware State Prison (Whatley I), 802 F.3d 1205, 1209 (11th Cir. 2015)); Turner, 541 F.3d at 1082 ("This process is analogous to judgment on the pleadings under Federal Rule of Civil Procedure 12(c).").

"If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." Turner, 541 F.3d at 1082; see also Glenn, 706 F. App'x at 563–64; Pearson, 665 F. App'x at 867 ("At the second step, the court [is] permitted to make factual findings to resolve the issue of exhaustion."). After resolving the factual disputes, the court then decides whether, "based on those findings, defendants have shown a failure to exhaust." Bracero, 748 F. App'x at 202 (quoting Whatley I, 802 F.3d at 1209). Additionally, "[w]hen ruling on a motion to dismiss for failure to exhaust administrative

7

remedies, the court may consider evidence outside the pleadings." Berger, 709 F. App'x at 541 n.4 (citing Bryant v. Rich, 530 F.3d 1368, 1376 (11th Cir. 2008)); Glenn, 706 F. App'x at 563–64; Singleton v. Dep't of Corr., 323 F. App'x 783, 785 (11th Cir. 2009) (citing Bryant, 530 F.3d at 1376) ("A district court may properly consider facts outside of the pleadings to resolve a factual dispute regarding exhaustion where the factual dispute does not decide the merits and the parties have a sufficient opportunity to develop the record.").

### III.     Applying Turner

####      A.     GCDC Administrative Remedies

Under the GCDC Grievance Policy, an inmate must submit the official grievance form within five days of discovering or when he reasonably should have discovered the incident. Doc. 30-2 at 7. The Grievance Committee must review and respond within 15 days of submission. Id. at 8. After receiving a formal response, the inmate has three days to accept the findings or appeal to the jail administrator. Id. If an inmate appeals the decision, he is to provide the written reasons for his appeal to the jail administrator. Id. The jail administrator must review and respond to the appeal within 10 days, after which the procedure is terminated. Id. If the time limit for either level expires without a response, this will be deemed a denial of the request. Id.

Grievance forms are available via the inmate kiosk.[3] Id. at 13. The inmate should complete the grievance form by providing the details of the complaint, including date, time,

---

[3] The procedures and requirements described in this paragraph appear on the first screen an inmate sees when the inmate accesses the kiosk to file a grievance. Undersheriff Mario Morales provided a copy of the instructions shown on this screen with his affidavit. Doc. 30-2. These procedures are not found in the separate six-page written grievance policy Undersheriff Morales provided. Even so, Defendants Horne and Montanez maintain the procedures shown on the initial screen are part of GCDC's grievance policies and procedures. Doc. 30 at 11–12. Plaintiff does not dispute the on-screen instructions are part of the grievance procedure requirements; Plaintiff, instead, argues he complied with all requirements.

explanation of the events, and names of those involved.  Id.  A grievance will not be investigated without the specific officer's name involved.  Id.  If more than one officer is involved, then a grievance must be filed individually against each officer.  Id.  Duplicate grievances are not allowed and will not be processed.  Id.

### B. Plaintiff Failed to Exhaust His Administrative Remedies

At step one under Turner, the Court must consider the "factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, take[] the plaintiff's version of the facts as true."  Turner, 541 F.3d at 1080–82.

Defendants allege Plaintiff initiated six grievances related to his claims, and he filed one appeal.  Doc. 30-1 at 5–6.  Plaintiff filed three grievances within five days of the June 4, 2022 incident from which his claims arise: Grievance Numbers 615455, 615456, and 615585.  Id. at 5–6.  Plaintiff filed the first of these three grievances on June 5, 2022, and he received a response on the same day.  Id. at 5.  Plaintiff also filed three grievances more than five days after the incident: Grievance Numbers 616185, 616381, and 616745.  Id. at 6.  Plaintiff filed the last of these grievances on June 17, 2022.  Id.  Defendants contend Plaintiff signed his Complaint for this lawsuit on July 12, 2022.  Id. at 7.  Defendants allege Plaintiff attempted to initiate a grievance appeal on August 1, 2022.  Id. at 6.  Defendants also allege Plaintiff identified none of the specific officers involved in any of his grievances.  Id. at 7.  Plaintiff did not file a grievance individually against each officer.  Id.

Plaintiff does not address any of Defendants' particular factual allegations.  Plaintiff does not allege he filed any particular grievance or appeal on any particular date.  Plaintiff only states

---

Accordingly, I apply the GCDC internal grievance procedures, as set forth in the written grievance policy and on the initial screen shown on the kiosk when an inmate files a grievance.

he "exhausted the grievance kiosk procedure starting initially on the day of June 5, 2022 . . . ." Doc. 35 at 2. Plaintiff does not allege the grievance procedure was unavailable to him.

The parties' factual allegations do not conflict. Defendants specify Plaintiff filed six different grievances and one appeal on different dates and failed to identify the specific officers involved. Though Plaintiff concludes he exhausted the applicable procedure, he does not allege if or when he in fact filed a grievance or appealed a grievance or that he identified specific officers in his grievances. Plaintiff alleges no facts in contradiction with Defendants' factual allegations. Thus, I must consider how the grievance procedure applies to the facts Defendants alleged.

Plaintiff failed to exhaust his administrative remedies because he failed to timely appeal. The appeal Plaintiff attempted on August 1, 2022, was not sufficient to exhaust any of the six grievances Plaintiff filed. Plaintiff had three days to appeal Grievance Number 615455 after he received a response on June 5, 2022, but he attempted his appeal nearly two months later. Plaintiff filed Grievance Number 615456 and Grievance Number 615585 no later than June 9, 2022, so an appeal was due 3 days after the 15-day response time ran—no later than June 27, 2022. Plaintiff filed three untimely grievances, but untimely grievances cannot satisfy exhaustion. Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005). Still, even if Plaintiff's sixth and latest grievance filed on June 17, 2022, were timely, after accounting for the 15-day response time and the 3-day deadline for appeals, he had until July 5, 2022, at the latest, to appeal it.

Plaintiff failed to appeal his grievances before he filed his Complaint. A pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing. Daniels v. United States, 809 F.3d 588, 589 (11th Cir. 2015) (quoting Williams v. McNeil, 557 F.3d 1287,

1290 n.2 (11th Cir. 2009)).  Courts assume the prisoner delivered the filing to prison authorities on the date the prisoner signed it, absent any evidence to the contrary.  Id. (quoting Jeffries v. United States, 748 F.3d 1310, 1314 (11th Cir. 2014)).  Here, Plaintiff did not date the certification page of the pro se complaint form he used for his Complaint.  Doc. 1 at 35.  Plaintiff attached a five-page handwritten "Witness Statement Form" bearing the signature, seal, and date of a notary public on July 12, 2022.  Id. at 26.  Since the notary certified Plaintiff signed at least a part of his Complaint on July 12, 2022, I deem Plaintiff's Complaint filed on July 12, 2022, under the prison mailbox rule.[4]  Plaintiff did not attempt to appeal his grievances until after he filed his Complaint.  Since the undisputed facts establish Plaintiff failed to timely appeal according to the GCDC internal grievance procedures before he filed his Complaint, Plaintiff's Complaint is subject to dismissal at Turner step one.

Plaintiff also failed to exhaust his administrative remedies because he failed to follow the GCDC procedural requirements for naming each officer involved in a separate grievance.  The PLRA mandates strict exhaustion according to the available administrative remedy procedures. Johnson, 418 F.3d at 1155.  The PLRA itself does not require Plaintiff to name every individual Defendant in a grievance.  Jones, 549 U.S. 199, 219 ("[E]xhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances."); see also Toenninges v. Ga. Dep't of Corr., 600 F. App'x 645, 649 (11th Cir. 2015) ("Exhaustion of the grievance procedure does not require that every single defendant be identified by name." (citing Parzyck v. Prison Health Servs. Inc., 627 F.3d 1215, 1218 (11th Cir. 2010))).  However, Plaintiff must

---

[4]    I acknowledge Plaintiff's Complaint was not docketed by the Clerk of Court until September 13, 2022.  The envelope containing Plaintiff's Complaint does not bear any postmark.  Thus, it is unclear when Plaintiff may have provided his Complaint to prison officials for mailing.  However, in the absence of any other information—and Plaintiff's silence on the issue—the only discernible date that can be used for the filing date July 12, 2022, the date of the notary's signature.

comply with GCDC procedures to name individual officers in separate grievances to the extent possible. See Toenninges, 600 F. App'x at 648 ("[A] prisoner must complete the administrative review process according to the rules set forth in the prison grievance process itself." (citing Jones v. Bock, 549 U.S. 199, 218 (2007))); Brown v. Sikes, 212 F.3d 1205, 1208 (11th Cir. 2000) (holding a prisoner must provide "the identity of any officials he thinks have wronged him and any witnesses," though "a grievance procedure that requires a prisoner to provide information he does not have and cannot reasonably obtain" renders the remedy unavailable).

Plaintiff provides no valid reason for failing to name each Defendant in a separate grievance according to the GCDC procedure. In fact, Plaintiff does not address the issue at all. Plaintiff does not argue Defendants' names were unknown to him or the GCDC procedure otherwise rendered the remedy process unavailable. According to Defendants' undisputed allegations, Plaintiff simply failed to name each Defendant in a separate grievance. Thus, I find at Turner step one Plaintiff failed to complete exhaustion according to the available administrative remedy procedures.[5]

---

[5] To the extent there is any dispute of fact and the Court would need to proceed to Turner step two, I would find the record shows Plaintiff did not exhaust available administrative remedies. The record shows Plaintiff filed six grievances and one appeal, consistent with Defendants' allegations. Doc. 30-3 at 148–50, 158, 161, 164, 197. Plaintiff filed his one appeal on August 1, 2022—too late to meet the GCDC grievance procedure deadlines and after Plaintiff signed his Complaint. Id. at 197. Plaintiff also failed to name any of the Defendants in his grievances, though he names "Officer Warren" in Grievance Number 615456. Id. at 149. Thus, if it were necessary to proceed to step two, I would conclude Plaintiff's claims are due to be dismissed under that portion of the Turner test as well.

I note, however, at least one of Plaintiff's six grievances resembles an appeal rather an initial grievance. Grievance Number 615585 was filed on June 6, 2022, one day after Plaintiff received a response to his first grievance. Id. at 150. This grievance is addressed to G. Ferra, who is the jail administrator according to Plaintiff's Complaint. Appeals must be addressed to the jail administrator according to the GCDC grievance procedure. The response to this grievance states the incident "has been considered resolved on our part and will not be discussed any further with [Plaintiff] on the kiosk." Id. Despite this, nothing in the record clearly identifies this grievance as an appeal. Plaintiff does not allege in his Response he filed an appeal on June 6, 2022, and Plaintiff does not characterize this or any other grievance record as an appeal. Notably, Plaintiff continued to file grievances after June 6, 2022,

In his opposition to the Motions to Dismiss, Plaintiff contends Defendants' exhibits are missing documents. Doc. 35 at 2 ("[S]everal of the grievance complaints and the timelines were missing like initially the very first complaint was made on the early morning of June 5, 2022 at approximately 12:18 a.m. after being brought from medical after complaining to said officers that I was experiencing severe head and back trauma[.]"); Doc. 42 at 1 ("I noticed several grievances was missing."). Undersheriff Morales swears Plaintiff has filed 245 grievances and requests at GCDC. Doc. 30-2 at 2. Defendants attached a record of 245 grievances and requests spanning from September 18, 2015 to October 31, 2022. Doc. 30-3. Although Plaintiff points to one additional "complaint" he made that is not in that grievance history, it appears that grievance was actually included in the documents Defendants produced. Doc. 40 at 2 (noting a grievance from within six minutes of the time Plaintiff identified). More importantly, Plaintiff does not show how the presence of an additional complaint on June 5, 2022, would require a different result in the exhaustion analysis. Regardless, I recommend dismissal at Turner step one based on the parties' allegations, not the documents in the record. According to the parties' respective factual allegations, Plaintiff failed to properly complete the GCDC grievance procedure. Accordingly, I **RECOMMEND** the Court **GRANT** Defendants' Motions to Dismiss for failure to exhaust Plaintiff's administrative remedies. Because Plaintiff's claims are due to be dismissed for failure to exhaust his administrative remedies, I decline to address Defendants' argument for dismissal based on a failure to state a claim.

---

suggesting Plaintiff did not consider Grievance Number 615585 an appeal, or at least not a sufficient appeal.

### IV. Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has not yet filed a notice of appeal as to this disposition, it is proper to address this issue now. See Fed. R. App. P. 24(a)(3) (noting trial court may certify appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. County of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Thus, a claim is frivolous and not brought in good faith if it is "'without arguable merit either in law or fact.'" Moore v. Bargstedt, 203 F. App'x 321, 323 (11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis, there are no non-frivolous issues to raise on appeal, and an appeal on these claims would not be taken in good faith. Thus, the Court should **DENY** Plaintiff in forma pauperis status on appeal.

**CONCLUSION**

For the foregoing reasons, I **RECOMMEND** the Court **GRANT** Defendants Bonds and Montanez's Motion to Dismiss, **GRANT** Defendant Horne's Motion to Dismiss, and **DISMISS without prejudice** Plaintiff's Complaint based on his failure to exhaust available administrative remedies. Because I have recommended dismissal in this case, I also **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal and **DENY** Plaintiff leave to proceed in forma pauperis on appeal.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date. Objections shall be specific and in writing. Any objection the Magistrate Judge failed to address a contention raised in the Complaint or an argument raised in a filing must be included. Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions. 28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, 977 F.3d 1185, 1192–93 (11th Cir. 2020). To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections. Harrigan, 977 F.3d at 1192–93; 11th Cir. R. 3-1. A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 6th day of August, 2024.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA